UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN MARCATANTE, JOHN KLAES, )
JERRY WHITLEY and THOMAS SADOWSKI, )
)
                 Plaintiffs, )
)
vs. )     06 C 328
)
CITY OF CHICAGO, )
)
                 Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

The following matter is before the court on the motion of Defendant, City of Chicago ("City"), to dismiss Counts I, II, III, IV, and V of Plaintiffs', John Marcantante; John Klaes; Jerry Whitley; and Thomas Sadowski (collectively referred to as "Plaintiffs"), First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below the Motion is denied.

## BACKGROUND

Plaintiffs are former City employees who, while so employed, worked under collective bargaining agreements ("CBA") that were due to expire on or about June 30, 2003 and covered employees represented by a coalition of thirty or more labor unions ("unions"). In a June 26, 2003 letter (the "June Letter")

between the City and the coalition counsel, conversations regarding the extension of union contracts were confirmed. The letter indicated that the current agreements were to continue on a day-to-day basis and the terms therein were to continue without change. The letter further addressed the issue of wage increases as consideration for the extension of the current CBA and continued work of union employees. The letter was signed by: Marvin Gittler, Coalition Counsel; Michael Duffee, Chief Labor Counsel for the City of Chicago; and Martin Gomez, Director of Labor Relations for the City of Chicago.

After the June 30, 2003 CBA termination date, Plaintiffs continued to work for the City until February of 2004, when they retired in accordance with a City early retirement offer. At that time, a new CBA had not been reached between the City and the unions; however, in October of 2005, the unions and the City reached a new CBA granting retroactive pay increases to City employees that were employed before July 1, 2003 and still employees as of July 18th, 2005. Plaintiffs did not receive the retroactive wage increases because they had retired prior to the applicable date.

On January 20, 2006, Plaintiffs filed the instant suit, and on April 14, 2006, filed a five Count First Amended Complaint alleging two violations of the Due Process Clause of the Fourteenth Amendment, 42 U.S.C § 1983; a violation of the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C § 1983;

breach of contract; and Quantum Meruit under Illinois law. In response, the City filed the instant Motion to Dismiss the First Amended Complaint in its entirety.

## LEGAL STANDARDS

When considering a 12(b)(6) motion to dismiss, a court evaluates the legal sufficiency of a plaintiff's complaint, not the merits. Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). We must accept all well-pleaded allegations as true and will not dismiss a case for failure to state a claim unless the plaintiff cannot prove any facts sufficient to support his claim. Conley, 355 U.S. at 45-46. All inferences are to be drawn in a light most favorable to the plaintiff. Jackson v. E.J. Branch Corp., 176 F.3d 971, 978 (7th Cir. 1999). To survive a motion to dismiss, a plaintiff need only provide a "short and plain statement" under Rule 8(a)(2); the particulars of the claim are not required. Midwest Gas Servs. v. Ind. Gas. Co., 317 F.3d 703, 710 (7th Cir. 2002). Nonetheless, to withstand a motion to dismiss, a complaint must allege facts setting forth the essential elements of the cause of action. Doherty v. City of Chi., 75 F.3d 318, 326 (7th Cir. 1996). With these principles in mind, we turn to the instant Motion.

## DISCUSSION

For the most part, the City's arguments in support of its Fed. R. Civ. Proc. 12(b)(6) Motion asks that we make factual determinations, which are presently inappropriate. As previously stated, the depth of our review under such a motion

is confined to assessing whether Plaintiffs have posited legally sufficient facts to place defendants on notice of their asserted causes of action. Accordingly, we address each Count under that standard.

**A. Count I: Due Process**

Count I of the First Amended Complaint alleges that the City failed to provide Plaintiffs with proper notice and an opportunity to be heard at the time the City made its decision on retroactive pay increases. In order for a plaintiff to have a valid due process claim there must be an allegation of a violation of substantive or procedural right of due process in connection with a protected liberty or property interest. See Smith v. Board of Educ. Of City of Chicago, 853 F.2d 517, 520 (7th Cir. 1988). The property interest claim must be legitimate and the right asserted must be more than just a desire for the property in dispute. Miller v. Crystal Lake Park Dist., 47 F.3d 865, 867 (7th Cir. 1995).

The City argues that Plaintiffs have no constitutionally protected right to the retroactive wage increase. In contrast, Plaintiffs clearly alleges that the retroactive pay increase constitutes a constitutionally protected property interest. Plaintiffs contend the source of this interest is the alleged contract created by the June Letter. The Seventh Circuit has found that a written contract can be the source of a constitutional property interest. See Cushing v. City of Chicago, 3 F.3d 1156, 1159-1160 (7th Cir. 1993). It is evident that Plaintiffs allege that the

June Letter constituted a contract governing their rights to retroactive wage increases which was subsequently altered by the CBA. Specifically, Plaintiffs submit that the new CBA affected their property interests in receiving the retroactive pay increase. Further, Plaintiffs' contend that they were not afforded adequate notice or an opportunity to be heard regarding such. Although the City maintains that the facts indicate that the June Letter did not constitute a contract, such a determination would require inappropriate findings of fact at this stage of the litigation. Consequently, under the liberal notice pleading standards, Plaintiffs have adequately alleged a violation of due process under Count I.

**B. Count II: Equal Protection**

Count II of the First Amended Complaint alleges Plaintiffs were denied equal protection when treated differently, as retired employees, than active employees regarding the retroactive pay increases. To adequately allege an equal protection claim, Plaintiffs must set forth that: 1) the City intentionally treated them differently than others similarly situated and 2) that there is no rational basis for the difference of treatment. Village of Willowbrook v. Olech, 582 U.S. 562, 564 (2000). Defendant contends that a rational basis for the disparity exists, namely that the status difference between retired and current employees justifies the disparity and, therefore, Count III fails.

Plaintiffs allege there are two similarly situated groups of people, active and retired employees, effected by, and treated differently with respect to, the retroactive pay increases. Further, Plaintiffs submit that at the time of the June Letter all employees were bound by same bargaining process with the same benefits, but there are now disparities under the new CBA regarding these groups. In addition, Plaintiffs allege that at the time of their retirement, they reasonably believed that they were similarly situated to active employees in terms of their rights surrounding retroactive pay, and given no indication otherwise. Although the City contends that there was a disparity between the retired Plaintiffs and active employees, the mere fact that Plaintiffs were retired does not govern whether they should have been treated differently. To determine whether there should have been such a disparity would require factual determinations surrounding the agreement; it is inappropriate to do so for purposes of this motion. Consequently, the City's Motion is denied as to Count II.

**C. Count III: Breach of Contract**

Count III alleges that the City breached the contract established by the June Letter which supposedly gave Plaintiffs a right to retroactive wages. Conversely, the City contends that the June Letter did not constitute a contract, but instead was a mere offer to continue to bargain. The City maintains that at

the time of the June Letter, and the Plaintiffs retirement, the "who," "what," and "when" of the retroactive pay increase issue was not resolved.

In Illinois, a plaintiff seeking to state a claim for breach of contract must allege that a valid and enforceable contract existed, that the plaintiff fulfilled all of his or her obligations under the contract, that the defendant did not meet its obligations, and that the plaintiff was injured as a result of the defendant's breach. Henderson-Smith & Assoc., Inc. v. Nahamani Family Serv. Ctr., Inc., 752 N.E.2d 33, 43 (2001). Plaintiffs assert that the June Letter was in fact a contract granting rights to retroactive pay in consideration for their post July 1, 2003. It is clear that the June Letter was plainly accepted by the parties on account of continued employment/work. Yet, Plaintiffs submit that the City did not fulfill its obligations under the alleged contract, and that they were injured by not receiving their retroactive pay increases.

Under the liberal notice pleading standard, Plaintiffs have set forth the necessary elements to support their breach of contract claim. Although Defendants contend that the June Letter did not constitute a contract, it is evident that the parties intended the June Letter to be contractual in nature. Whether the June Letter was to govern Plaintiffs right to retroactive pay increases is unclear because it is ambiguous or silent on the matter of whether they had to be employed when the retroactive increases were established. Consequently,

Plaintiffs allegations that they had a contractual right to retroactive pay increases are sufficient to defeat a motion to dismiss based on inadequate pleadings.

### D. Count IV: Quantum Meruit

Plaintiffs alternatively assert that even if the June Letter is not a contract in a formal sense, that the June Letter constitutes a contract implied-in-fact. Under Illinois law, a contract implied-in-fact arises from a promissory expression that is not shown by direct or explicit words between the parties, but is gathered by implication or deduction from the conduct of the parties, the language used by the parties, or other circumstances of the transaction. Midcoast Aviation, Inc. v. General Electric Credit Corp., 907 F.2d 732, 743 (7th Cir. 1990); Rennick v. Contel Corporation, No. 87-20292, slip op., 1989 WL 197433 (N.D. Ill. 1989). The Seventh Circuit has said that the elements of an implied-in-fact contract are: (1) the plaintiff rendered services; (2) the defendant received the benefit of those services; and (3) the defendant's retention of those services without giving compensation in exchange would be unjust. Midcoast Aviation, 907 F.2d at 737. Quantum Meruit is not a viable cause of action where a contract already governs the parties' relationship. Cruz v. Stapleton, 251 Ill. App. 3d 833, 622 N.E.2d 1253, 190 Ill. Dec. 936 (2d Dist. 1993). However, as we have previously said, courts cannot dismiss a Quantum Meruit claim outright where it is unclear whether the plaintiff is attempting to recover for

damages that are not covered by a contract. Perini Bldg. Co. v. University of Chicago, 1999 U.S. Dist. LEXIS 1127 (D. Ill. 1999).

Plaintiffs allege that if the letter is not a contract covering the retroactive pay increases in a formal sense, then the actions of the parties, language used in the letter, and the circumstances surrounding its creation support the notion that an implied contract was created. Specifically, Plaintiffs contend that it was the intention of the parties that any changes to the CBA directly related to the June Letter would retroactively affect the employees working at the time of said letter. Plaintiffs submit that they continued to work for the City at its benefit in support of said intention. In addition, although the current CBA clearly governs the relations between the City and its current employees, it is unclear whether it was intended to govern employees who retired prior to the establishment of the retroactive pay increases. These are material questions of fact. Consequently, Plaintiffs have adequately set forth the necessary facts to support their Quantum Meruit Claim.

### E. Count V: Due Process

Count V alleges that the City violated Plaintiffs' due process rights and breached a fiduciary duty by not notifying them of material facts relating to their retirement and fraudulently inducing them to retire despite knowing that the retroactive wage increase would be negatively affected by doing so. As

previously outlined (supra), an allegation of a procedural due process deprivation requires that the plaintiff suffer an injury to a life, liberty, or property interest.  See Albright, 114 S. Ct. at 812.  In Count I we noted that this court recognizes a written contract can be the source of a constitutional property interest.  See Cushing, 3 F.3d at 119-1160.

Plaintiffs allege that they have a constitutionally protected property interest in their retroactive pay increases, the source of which derives from the June Letter.  Plaintiffs further submit that at the time of their retirement they were not afforded with the proper information at the City's disposal regarding the effect that retirement would have on their right to receive retroactive wage increases.  In addition, Plaintiffs maintain this lack of information induced them to make decisions they may not have made if given all relevant material and that, consequently, they were injured by not receiving such.

Based on the submissions of the parties, the issue of whether Plaintiffs retired status required the City to disclose all of the information Plaintiffs allege was relevant and at the City's disposal regarding their retirement would require fact determinations not appropriate at this stage in the litigation.  Presently, it is enough that Plaintiffs allege that their rights to retroactive wage increases were negatively affected when the City failed to disclose relevant information.  Consequently, the City's Motion is denied as to Count II.

## **CONCLUSION**

For the foregoing reasons, the City's Motion to Dismiss is denied in its entirety.

／s／ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:  August 10, 2006