UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN MARCATANTE, JOHN KLAES, JERRY WHITLEY, & THOMAS SADOWSKI, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 06 C 328 |
| CITY OF CHICAGO, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Plaintiffs John Marcatante, John Klaes, Jerry Whitley, and Thomas Sadowski (collectively referred to as "Plaintiffs") for certification of a class and subclass pursuant to Fed. R. Civ. P. 23(b)(3). For the reasons set forth below, the motion is denied in part and granted in part.

## BACKGROUND

Plaintiffs are former employees of Defendant City of Chicago. Marcatante, Klaes, and Whitley each worked in the Department of Aviation; Sadowski, the Department of Fleet Management. Each was a member of a trade union, and their terms of employment were set forth in collective bargaining agreements ("CBAs") between the City and their respective unions.

The CBAs that were in effect for July 1999-June 2003 by their terms were to expire on June 30, 2003. The unions to which Plaintiffs belonged had joined in a coalition of 35 building trade unions to negotiate the terms of the new CBAs. However, as June 30 approached, the City and the coalition were unable to craft an agreement that would take its place for the subsequent four years. In late June, the attorneys for the City and for the coalition agreed to extend the terms of the 1999-2003 agreements through midnight, July 30. The arrangement was memorialized in a letter dated June 26, 2003 ("the June 26 letter"); it specified that, after July 30, the agreements would continue day-to-day, with no change in their terms, unless one of the parties terminated in writing. The letter further stated that if the parties later agreed to wage increases for the time period following July 1, 2003, those wage increases would be retroactive to that date if the parties did not mutually agree to a different one.

In late 2003 or early 2004, the City offered an early retirement incentive program ("ERIP") to eligible employees. Each of the Plaintiffs took advantage of this program and retired in February or March 2004. Though participation was voluntary, according to Plaintiffs, the City offered this program with the intention of depriving participants of benefits they would have eventually received if they had continued working for the City until the new CBAs were hammered out over a year later.

Meanwhile, the City and the unions continued their negotiations. On July 18, 2005, they reached a tentative agreement. In part, it provided for retroactive wage increases for work performed between July 1, 2003 and July 18, 2005, but only for two identified groups of employees. The first consisted of employees who were on the City payroll as of July 18, 2005. The second was comprised of employees who had been laid off with recall rights. On October 6, 2005, the City Council ratified the new CBAs.

Because Plaintiffs did not fall within the two groups identified in the agreement, they did not receive retroactive wage increases. In January 2006, Plaintiffs filed a five-count complaint against the City. Counts I and V sound in procedural due process; Count II is an equal protection claim. Counts III and IV are state-law causes of action, for breach of contract and quantum meruit, respectively.

In addition to advancing these claims on their own behalf, Plaintiffs seek to represent two classes of City employees. For Counts I-IV, the putative class would be comprised of all employees who, between June 30, 2003, and July 18, 2005, stopped working for the City for any reason and who belonged to the bargaining units of the unions within the coalition when their employment ceased. For Count V, the proposed class would be made up of the subset of that class who left their employment via the ERIP.

The complaint has since been amended and has withstood a motion to dismiss. The parties also engaged in a court-mediated settlement conference. When an agreement could not be reached, they proceeded to discovery. The discovery process was completed after seven months, and each side expressed a desire to move for summary judgment. During the briefing of those motions, Plaintiffs filed the instant motion to certify the two classes described above. The motions for summary judgment have been stayed pending the instant decision.

## LEGAL STANDARD

To be certified as a class action, a claim must first satisfy four criteria: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). The first two focus on the characteristics of the class as a whole: the number of potential class members must so large that joinder would be impracticable, and legal or factual questions presented in the putative class action must common to all class members. Fed. R. Civ. P. 23(a)(1), (a)(2). The third and fourth concentrate on the attributes of the parties seeking to represent the class: the claims or defenses of those representatives must be of the same type as those of the class they seek to represent, and the representatives must be able to protect the interests of the class fairly and adequately. Fed. R. Civ. P. 23(a)(3), (a)(4).

If an action shows each of these four attributes, the inquiry shifts to examine whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231, 2245 (1997). Rule 23(b)(3) specifies that a class can be certified if the common factual or legal questions identified for purposes of Rule 23(a)(2) predominate over issues that pertain only to individual class members and if adjudicating the controversy as a class action would be superior to other possible methods. The party who seeks class certification bears the burden of showing that the Rule 23 requirements are satisfied. *Amchem*, 521 U.S. at 614, 117 S. Ct. at 2245.

**DISCUSSION**

As stated above, Plaintiffs seek certification of two classes of employees; they offer the same rationales for certification of both. We briefly note that the City challenges Plaintiffs' standing to bring this suit on the grounds that they have not pursued any actions against their unions for a breach of the duty of fair representation. Plaintiffs counter that the union ceased to represent them when they left the bargaining unit at their retirement. It is well-settled that a union represents only members of the bargaining unit and owes a duty of representation only to those for whom it serves as the exclusive representative. *See*, *e.g.*, *Allied Chemical and Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 172, 92 S. Ct. 383, 394 (1971); *Toth v.*

*USX Corp.*, 693 F. Supp. 693, 700-03 (N.D. Ill. 1988). Former employees can designate a union as their agent after they leave the bargaining unit as long as the employer agrees to the arrangement. *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538, 540 (7th Cir. 1997). Plaintiffs' position on the standing argument indicates that they had not made any such designation. Accordingly, we conclude that the Plaintiffs have standing to bring suit against the City for the claims contained in the complaint.

**A. Class of ERIP Participants**

*1. Numerosity*

To satisfy the numerosity requirement, the number of putative class members must be sufficiently large to make joinder of all members impracticable. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). According to Plaintiffs, at least 1022 employees participated in the ERIP. The City does not challenge Plaintiffs' assertion that this is sufficiently numerous to render joinder of all class members impracticable, and we agree that joinder of over 1000 plaintiffs would not be workable.

*2. Commonality*

Where injuries alleged by a class are the result of a standardized course of conduct by a defendant, the class members' claims will usually present at least some common facts and common legal questions. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). For the proposed subclass of early retirees, the allegations of the

complaint present numerous common questions. Examples include whether the June 26 letter created a contractual right to retroactive wage increases for persons whose employment with the City ended before July 18, 2005; whether the retirees otherwise had a legitimate claim of entitlement to the retroactive increases that other employees received; whether employees who were no longer working for the City on July 18 can be considered similarly situated to those who were still employed; whether the City had a rational basis for treating early retirees differently from those who received retroactive wage increases; whether the City was obligated to initiate negotiations of contract terms with early retirees individually; and whether the City had a duty to inform employees considering the ERIP that they might be treated differently from employees who remained with the City in a later CBA.

These questions raise legal and factual issues that are common to all participants in the ERIP, so the commonality requirement is shown for the subclass.

*3. Typicality*

The typicality requirement of Fed. R. Civ. P. 23(a) is met if the same course of conduct that produced the named plaintiff's claim produced the claims of the class and the same legal theory is advanced as to both. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). This factor connects the two factors of commonality and adequacy of representation by ensuring that the claims litigated by the class

representative will involve the same factual and legal arguments that pertain to the class as a whole and consequently that the resolution of the representative's claims will in turn address the claims of the group. *Id.*; *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997).

The City's position on the issue of typicality revolves around whether Plaintiffs' claims are typical of the larger class of all employees who left, but there is no contention that their claims are not typical of the early retirees. Plaintiffs refer to information that was distributed about the program in the form of seminars and documentation as well as the need for special legislation to allow the City to offer the program. The implication of these references is that ERIP participants received standardized treatment, and Plaintiffs' individual treatment conformed with the standard procedures. Accordingly, Plaintiffs' positions on each of the common issues identified above would be cut from the same cloth as those of the other ERIP participants, satisfying the typicality requirement.

*4. Adequacy*

"[A]dequacy of representation is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest" of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). The City does not challenge

the adequacy of Plaintiffs' attorneys as class counsel, and their objections to the adequacy of Plaintiffs as class representatives are developed only as to the larger class discussed below. The Plaintiffs have thus far engaged in extended litigation proceedings and there is no indication that their claims are inconsistent with those of other ERIP participants. Furthermore, the similarities between Plaintiffs' individual claims and those addressed on behalf of the subclass convince us that the Plaintiffs will advance the interests of the subclass if they are permitted to serve as its representatives.

5. *Predominance*

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Though the two are undoubtedly related, the predominance factor of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem*, 521 U.S. at 623-24, 117 S. Ct. at 2231, 2249-50. While commonality looks to whether class members share factual or legal issues, the predominance inquiry examines whether the shared attributes will be a main focus of the litigation. *See id.*

The City contends that predominance cannot be shown because, in their view, issues of when an employee stopped working with the City, what each person's subjective understanding of the City's obligations were toward him or her, what form notice was to have taken if it was required, and when the obligation to provide notice

was triggered. Though some of these issues may need to be resolved as this case unfolds, they will not take center stage with the others identified above remaining on the periphery. For example, a conclusion that the June 26 letter did not create a contractual obligation for the City would obviate issues of the timing and content of notice. Interestingly, the City's arguments appear to concede that no notice was given, in which case the questions they advance regarding notice become irrelevant. If notice was required and none was given, debates over what would have hypothetically been sufficient to provide notice would be pointless. And while we agree that the individual decisionmaking processes of class members could be relevant, by implication, Plaintiffs claim that the ERIP was a standardized program with terms that would apply to all employees who chose to participate in it. The requirement that common claims predominate does not require that the situations of the various class members be identical. The issues that the members of the subclass share are of greater importance to the overall litigation than those that will differ from person to person. That is sufficient to satisfy the predominance requirement.

*6. Superiority*

Finally, and in light of our conclusions on the other five factors discussed above, we conclude that class adjudication would be a superior method for dealing with the claims of the early retirees. This case involves large number of potential plaintiffs and

is largely one of contract interpretation or legal issues related thereto. There is no need for separate adjudications, and judicial economy is best served by one court considering and providing a single, uniform disposition of these legal issues. Accordingly, we conclude that Plaintiffs have shown each of the Rule 23 requirements for the subclass and certify the following class with respect to Count V: all former City of Chicago employees who 1) worked for the City of Chicago after June 30, 2003, 2) who retired in either 2003 or 2004 pursuant to the ERIP, 3) who, at the time that they retired, were in a bargaining unit represented by one of the unions that were part of the coalition of building trade unions that negotiated jointly with the City of Chicago regarding the 2003-2007 CBAs, and 4) who did not designate their former union as their bargaining representative subsequent to their retirement for purposes of the 2003-2007 CBAs.

**B. Class of All Coalition Union Members Who Left City Employment**

To obtain certification of the larger class, Plaintiffs must satisfy all of the six factors listed above vis-à-vis the group of all members of the unions within the coalition who left their jobs with the City between June 30, 2003, and July 18, 2005. If any one of the factors is not satisfied, the class cannot be certified. *Retired Chicago Police Ass'n*, 7 F.3d at 598.

The proposition that the City's conduct was the same toward most of the employees within the larger proposed class, i.e., retroactive pay increases were not

given to those employees, is straightforward. It is upon that premise that Plaintiffs base their request for certification of the larger class. Though the uniform treatment alleged satisfies the commonality requirement of Rule 23, Plaintiffs' showing falls short in the areas of typicality and predominance, which in turn effect adequacy of representation and superiority. *See id.* at 597. In fact, Plaintiffs' arguments with respect to the subclass and common sense considerations prevent certification of the larger class. A centerpiece of Plaintiffs' individual claims is their perception that their voluntary early departure would not affect the City's later treatment of the services they provided while they were still employed. Such an understanding would not be a feature shared by all members of the proposed class, such as employees who died or those who were fired for cause. Plaintiffs also focus on a contention that the City essentially tricked them into leaving; others who left under different circumstances would not have such a feature to their claims. One of Plaintiffs' main motivations for pursuing this action is the effect that the retroactive wage increases could have on the level of their pensions; the proposed class would include members for whom such issues would not be implicated. Moreover, there is no indication that all employees who would be within the proposed class were not represented by the union at the time the new CBAs were finalized, either through continued membership within the bargaining unit or by

designation of the union as their representative as discussed in *Rossetto*.[1] The clear divergences between Plaintiffs and other members of the proposed main class convince us that permitting Plaintiffs to pursue the first four claims of the complaint on behalf of all employees who left their City jobs would be ill-advised. Accordingly, the motion to certify the larger class is denied.

We note that Plaintiffs have not specifically requested certification of the subclass with respect to the claims set out in Counts I-IV, though we cannot discern a reason why they would not pertain to the members of the subclass. Since these employees would satisfy the definition for the larger class, perhaps Plaintiffs found a separate request unnecessary. Because the differences pointed out above would not be present between Plaintiffs and other ERIP participants, adjudication of all five counts of the complaint as to the subclass would not appear to raise the red flags that give us pause with respect to the larger proposed class. Accordingly, the class identified with respect to Count V is also certified for Count I-IV.

---

[1] We also note, as an aside, that the definition that Plaintiffs have set forth for this class could include employees who left their employment during the operative period via layoff but who had recall rights as of July 18, 2005. Those employees were given retroactive pay raises in the new CBAs but could still have all of the attributes set out in the proposed definition even though they have not suffered the injury that the class alleges.

## CONCLUSION

Based on the foregoing, the motion for class certification is granted in part and denied in part.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:　December 21, 2007