UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN MARCATANTE, JOHN KLAES, JERRY WHITLEY, and THOMAS SADOWSKI, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 06 C 328 |
| vs. | ) ) | |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on cross motions for summary judgment. Plaintiffs John Marcatante, John Klaes, Jerry Whitley, and Thomas Sadowski ("Plaintiffs"), move on behalf of themselves and a previously certified class for summary judgment of liability against Defendant City of Chicago ("the City") on the five counts of the complaint. The City moves for summary judgment in its favor on all five counts. For the reasons set forth below, each motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs are former employees of Defendant City of Chicago. Marcatante, Klaes, and Whitley each worked in the Department of Aviation, while Sadowski was employed by the Department of Fleet Management. Each was a member of a trade union, and their terms of employment were set forth in collective bargaining agreements ("CBAs") between the City and their respective unions.

The CBAs that were in effect for July 1999-June 2003 expired on June 30, 2003. To bargain for subsequent CBAs, the unions to which Plaintiffs belonged joined in a coalition of 35 building trade unions. However, the City and the coalition were unable to craft replacement agreements before June 30. Shortly before the expiration date, the attorneys for the City and for the coalition agreed to extend the terms of the 1999-2003 agreements through midnight, July 30. The arrangement was memorialized in a letter dated June 26, 2003 ("the June letter"). It specified that, after July 30, the agreements would continue day to day, with no change in their terms, unless one of the parties terminated in writing. The June letter further stated that "the City agrees that wage increases, if any, agreed to by the parties shall be retroactive to July 1, 2003, unless the parties mutually agree to another date."

In late 2003 or early 2004, the City offered an early retirement incentive program ("ERIP") to eligible employees. Each named Plaintiff took advantage of this program

and retired in February or March 2004. Meanwhile, the City and the coalition continued their negotiations. On July 18, 2005, they reached a tentative agreement. In part, it provided for retroactive wage increases for work performed between July 1, 2003, and July 18, 2005, but only for two identified groups of employees. The first consisted of employees who were on the City payroll as of July 18, 2005. The second was comprised of employees who had been laid off with recall rights. On October 6, 2005, the City Council ratified the new CBAs and they took effect.

Because Plaintiffs did not fall within the two groups identified in the agreement, they did not receive retroactive wage increases. In January 2006, Plaintiffs filed a five-count complaint against the City. Counts I and V claim violations of procedural due process: Count I is premised on the denial of the wage increases; Count V, on the City's alleged failure to provide full information about the ERIP to prospective participants. Count II is an equal protection claim. Counts III and IV are state-law causes of action, for breach of contract and quasi-contract actions, respectively.

On December 21, 2007, this court certified a class consisting of all City employees who 1) left their job with the City 2) between June 30, 2003, and July 18, 2005, 3) via the ERIP and 4) belonged to the bargaining units of the unions within the coalition when they left their City job. Each side now moves for summary judgment on all counts of the class complaint.

## LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. Proc. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. *M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter

of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996).

With these principles in mind, we turn to the parties' motions.

## DISCUSSION

**A. Procedural Due Process Claims**

Plaintiffs' federal causes of action claim violations of 42 U.S.C. § 1983. Claims under § 1983 are comprised of two parts: 1) a deprivation of a right or interest secured by the Constitution or laws of the United States, 2) by a person or persons acting under color of state law. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). In this case, there is no question that the City and its agents were acting under color of state law. The parties part company on whether Plaintiffs have sufficiently established a deprivation of a protected interest.

The interests asserted in Counts I and V stem from the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Neither life nor liberty interests are implicated in this case; at issue are solely property interests.

*1. Count I: Denial of Wage Increases*

Plaintiffs' contentions for Count I are based on deprivation of three things they argue are protected property. The first is their continued employment with the City with termination only for cause. The second is a contractual right to retroactive wage increases based on the June letter and the City's past practices with respect to retroactive wage increases. The final asserted right is a contractual right to a reasonable wage for the services ERIP participants provided during the approximately seven months that they worked without an explicit agreement in place.

Public employees who have a legitimate claim to continued employment unless certain events occur have a property right in their jobs. *Confederation of Police v. City of Chicago*, 547 F.2d 375, 376 (7th Cir. 1977). According to Plaintiffs, they had a property right to their employment because, while they were still working for the City, they could be discharged only for good cause. Regardless of the correctness of that position, for § 1983 liability to attach, the state actor must be responsible for the deprivation of the right at issue, i.e., the City must be the party who ended the continued employment. In this case, it is undisputed that the ERIP participants left their jobs voluntarily. Plaintiffs' current position that they may have acted differently if they had known that the City and the coalition would ultimately bargain for them to be excluded from the groups of employees receiving retroactive wage increases is

insufficient to change the fact that it was Plaintiffs who decided to leave their jobs. The City did not force them to do so. Thus, there was no deprivation by the City of Plaintiffs' property right to continued employment.

Plaintiffs' next argument contends that they had a contractual right to retroactive wage increases via the June letter and the City's provision of such increases to employees who took early retirement between 1999 and 2003, the period covered by the previous CBAs. Express contracts with a government entity as well as past practices of a state actor leading to an expectation of consistent future conduct can be sources of constitutionally protected property rights. *See*, *e.g.*, *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S. Ct. 2694, 2699 (1972) (written contract); *Cushing v. City of Chicago*, 3 F.3d 1156, 1160 (7th Cir. 1993) (past practices). Moreover, although there can be no property interest in pay increases that depend upon "multiple layers of contingency," *Swartz v. Scruton*, 964 F.2d 607, 610 (7th Cir. 1992), or in the timing of particular increases, *Goros v. County of Cook*, 489 F.3d 857, 860 (7th Cir. 2007), when pay increases for public employees are promised to occur without conditions precedent that must be satisfied before an entitlement will attach, a constitutionally protectible property interest can arise. *See Rockford v. Principals and Supervisors Ass'n v. Bd. of Educ. of Rockford Sch. Dist. No. 205*, 721 F. Supp. 948, 955 (N.D. Ill. 1989); *Begg v. Moffitt*, 555 F. Supp. 1344, 1349 (N.D. Ill. 1983).

To determine whether the June letter created a contractual right to retroactive wage increases for ERIP participants, we need look no farther than its plain language. The letter unambiguously states that the only wage increases that would be retroactive were those that were "agreed to by the parties." As Plaintiffs point out, the unions to which they had belonged ceased to represent them at the bargaining table when Plaintiffs stopped working for the City. *Allied Chemical and Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 172, 92 S. Ct. 383, 394 (1971); *Toth v. USX Corp.*, 693 F. Supp. 693, 700-03 (N.D. Ill. 1988). The only parties to the CBAs were the City and the unions that comprised the coalition, and the only retroactive wage increases agreed to by those parties were for employees who were still working for the City as of July 18, 2005, or who had been laid off with recall rights. Thus, the June letter did not provide a contractual right to Plaintiffs, and the undisputed facts of this case show that the City complied with the obligations contained within the letter by providing the retroactive wage increases to which the City and the coalition agreed: those for employees on the City payroll as of July 18, 2005, and those for employees who had been laid off with recall rights.

The second prong of Plaintiffs' argument with regard to retroactive wage increases asserts that the City had given such increases to retirees in the 1999-2003 CBAs, leading the Plaintiffs to believe that they would be treated in a like manner.

Plaintiffs contend that this situation is therefore like that found in *Cushing*. 3 F.3d at 1161. *Cushing* involved review of a motion to dismiss a claim of a Chicago firefighter whose medical bills had been paid by the City for a condition that the City had initially thought to be duty-related. *Id.* at 1158. Eighteen months after the onset of the condition, the City stopped paying the bills without notifying Cushing that they would do so. *Id.* Cushing contended, and the Seventh Circuit agreed, that the City's prior practice of paying the bills could have created a reasonable expectation that it would continue to do so until Cushing's condition resolved. *Id.* at 1161.

We do not agree with Plaintiffs that *Cushing* controls this case, as this dispute arises in a fundamentally different context, namely one in which the contractual relationship under which the past practices occurred was over. When parties negotiate a new contract, they are free to come up with new terms to control their relationship. As a result, Plaintiffs could not reasonably expect that the City's future conduct under a new agreement would be the same as what was required under a terminated agreement. While Plaintiffs may have hoped that the new CBAs would include early retirees as a group receiving retroactive wage increases, an abstract desire or unilateral expectation is insufficient to establish a constitutionally protected property right. *See, e.g.*, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972).

Plaintiffs' final argument for a property right for Count I is founded in the Illinois law of contracts implied in fact. Implied contracts can provide constitutionally protected property rights. *See*, *e.g.*, *Vail v. Board of Educ. of Paris Union Sch. Dist. No. 95*, 706 F.2d 1435, 1438 (7th Cir. 1983). In the context of provision of services, an implied contract is formed if the party who provided the services can show that they were performed under circumstances where the recipient would be expected to pay for the services. *Ekl v. Knecht*, 585 N.E.2d 156, 161 (Ill. App. Ct. 1991). The amount due under such a contract is a reasonable price for the services rendered. *Id.* at 162. Here, Plaintiffs provided services to the City during the approximately seven months between the expiration of the previous CBAs and their departure from the City, services that the City would be expected to pay for. The City's acceptance of those services formed an implied contract to pay a reasonable price for Plaintiffs' work. Thus, we agree with Plaintiffs that they had a contractual entitlement to a reasonable rate of pay for the work they performed prior to their retirement that is a constitutionally protected property right.

Plaintiffs end their arguments at this point, but the law is clear that the identification of a constitutionally protected interest is not the end of a procedural due process analysis. "[T]o have and lose an entitlement is not enough to establish a deprivation of property without due process of law; it establishes only that a

deprivation of property has taken place." *Ellis v. Sheahan*, 412 F.3d 754, 756 (7th Cir. 2005). To establish a procedural due process claim, a plaintiff must go on to show that the state actor deprived him or her of the protected interest without notice and without giving them the opportunity to contest the deprivation at a meaningful time and in a meaningful way. *Id.* "The amount and timing of the process...varies with circumstances." *Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006).

In cases such as this one, in which a party to a contract seeks only money damages stemming from an alleged failure of a state to keep a contractual promise, a predeprivation hearing is not automatically required. *See*, *e.g.*, *id.* at 944-45 (7th Cir. 2006); *Ellis*, 412 F.3d at 758; *Mid-American Waste Systems, Inc. v. City of Gary, Ind.*, 49 F.3d 286, 291 (7th Cir. 1995). Such procedures are particularly unnecessary where it is difficult to imagine what form a meaningful predeprivation process could have taken. *See Ellis*, 412 F.3d at 758. This is such a case. Moreover, Plaintiffs have also pursued the postdeprivation remedy of a breach of contract claim in Count IV of this suit; they have offered no reason why this remedy does not provide them with all the process that is due in this setting. Accordingly, we conclude that the City is entitled to judgment as a matter of law on the procedural due process claims set out in Count I.

## 2. Count V: Incomplete Disclosure of Information

In Count V of the complaint, Plaintiffs contend that the City deprived them of a property right to "important and material information" about the ERIP without due process of law. As stated earlier, the first component of any § 1983 claim is the identification of a constitutionally protected interest or right. *See*, *e.g.*, *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 812 (1994). Nowhere do Plaintiffs argue or provide any authority that would support the theory that the information to which they refer could be property in the constitutional sense. Moreover, evidence adduced in this case demonstrates that such information could not even be provided when Plaintiffs contend it was required. At the time that Plaintiffs were making their decision about participation in the ERIP, retroactive pay increases for early retirees were still in the mix of potential outcomes of the CBA negotiations. More than a year passed between Plaintiffs' retirement and the time when the City and the coalition struck the deal that cut Plaintiffs out of the retroactive wage pool. The City was under no constitutional requirement to inform ERIP candidates of the potential fallout from any possible contract that might result from negotiations with the myriad unions representing City employees.

Without a right of constitutional proportion,[1] Plaintiffs have no procedural due process claim. The City is entitled to summary judgment on Count V.

**B. Count II: Equal Protection**

With Count II, Plaintiffs again look to the Fourteenth Amendment, which in pertinent part provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." Plaintiffs state that to prevail on this claim, they must show that the City treated them differently from others who were similarly situated with no rational basis for doing so. In support of their argument that they have established these things, they rely exclusively on their interpretation of the June letter as an unequivocal promise that all employees would receive retroactive wage increases. They claim that all City employees were thus similarly situated with respect to the wage increases. On the rationality aspect, they insist that the City's later action with respect to the wage increases was driven not by a rational government interest but by a "desire to exploit the conflict of interest between active and retired employees." Pls.' Mem. of Law in Supp. of Mtn. for Summ. Jgmt., at 10.

---

[1] Plaintiffs make passing reference to their interests in continued employment and to retroactive wage increases via the June letter, but for the reasons set forth above, we disagree that these assertions can properly underlie a procedural due process claim in this case.

As detailed in our discussion of Count I, we do not agree with Plaintiffs' interpretation of the June letter. The letter did not provide a contractual right to Plaintiffs, so they were not similarly situated to employees who received the retroactive increases. Furthermore, the different treatment of Plaintiffs and other employees was based upon the differentiation contained in the new CBAs. Compliance with contractual obligations is a rational basis for a governmental entity to act. Consequently, the City did not deprive Plaintiffs of the equal protection that is required by the Fourteenth Amendment, and it is entitled to summary judgment in its favor on Count II. Plaintiffs' motion on that count is correspondingly denied.

In sum, the City is entitled to summary judgment on the § 1983 claims set out in Counts I, II, and V.

Before considering the specifics of Plaintiffs' remaining counts, which assert only state-law claims, we must discuss the issue of jurisdiction. When a district court dispenses of all claims over which it has original jurisdiction, it may decline to continue to exercise jurisdiction over supplemental state-law claims. 28 U.S.C. § 1367(c)(3). Factors that play into the decision to maintain or relinquish jurisdiction include "judicial economy, convenience, fairness, and comity." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). The amount and nature of the district court's involvement with the case is also a consideration; if a federal court commits substantial

judicial resources or decides an issue dispositive of the state claim in the process of resolving federal claims, retention is appropriate. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

This court has already committed a substantial amount of resources in this case, including deciding a motion to dismiss, resolving discovery disputes, and passing on issues of class certification. Many of the same issues that are presented in the state-law claims have already been considered and addressed for the federal constitutional claims that form part of the Plaintiffs' complaint. To relinquish our supplemental jurisdiction now would cause a substantial duplication of effort by the parties and a state court tribunal if Plaintiffs chose to refile. We therefore conclude that retention of jurisdiction over the state-law claims in this suit is appropriate.

## C. Count III: Breach of Express Contract

Count III is a claim for breach of express contract that is premised upon the June letter. As we explained in the context of the procedural due process claim in Count I, the June letter did not provide Plaintiffs with a clear and unconditional contractual right to retroactive wage increases, and the City complied with the obligations contained within the letter by providing the retroactive wage increases to which the City and the coalition agreed. Thus, the City is not liable for breach of contract and is entitled to summary judgment on Count III.

**D. Count IV: Breach of Implied Contact**

Count IV claims a breach of an implied contract[2] based on Plaintiffs' provision of services to the City between July 1, 2003, and their retirement in 2004. As discussed above, we agree with Plaintiffs that the circumstances of this case gave rise to an implied contract whereby the City is obligated to pay them a reasonable price for their services during that time. *See Ekl*, 585 N.E.2d at 162.

Plaintiffs have offered up the rate that was paid to the employees who remained after the new CBAs went into effect as a reasonable price for the like work that Plaintiffs performed during late 2003 and early 2004. The City has not countered with a lesser rate, and the fact that the City was willing to pay such a rate to other employees who were providing the same services would negate any argument that they found it to be an unreasonable amount. Consequently, for the work that they performed from July 1, 2003, until the date of their retirement, the City was obligated to pay Plaintiffs the same price for their services that they eventually paid to the employees who continued to work for the City after July 18, 2003. Because it did not do so, it

---

[2]Count IV also refers to quantum meruit, but that theory is the measure of the appropriate damages for the breach of a contract implied in law, not a separate ground for recovery. *Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). Accordingly, we frame our discussion only in terms of implied contract.

breached the terms of the implied contract. Plaintiffs' motion for summary judgment is therefore granted as to Count IV. The City's cross motion on that count is denied.

## CONCLUSION

Based on the foregoing analysis, the City's cross motion [64] for summary judgment is granted with respect to Counts I, II, III, and V and denied with respect to Count IV. Plaintiffs' cross motion, Exhibit 1 to Document 73, for summary judgment of liability is denied with respect to Counts I, II, III, and V and granted with respect to Count IV.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Dated:   March 31, 2008